UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TYSON FRESH MEATS, INC, | ) |
| *Plaintiff* | ) |
| v. | ) CASE NO. 3:21-CV-90 RLM-MGG |
| DYKHUIS FARMS, INC., *et al.* | ) |
| *Defendant/Cross-Claimant* | ) |
| v. | ) |
| MCKENZIE HIGHLANDS, INC. *et al.*, | ) |
| *Cross-Defendants* | ) |

OPINION AND ORDER

Tyson Fresh Meats filed this products liability and negligence action against Dykhuis Farms and McKenzie Highlands, Inc. and its related businesses (collectively referred to throughout this opinion as "McKenzie Highlands"), after it was forced to dispose of 1,786,245 pounds of fresh meat product that was contaminated by hogs purchased from Dykhuis and raised by McKenzie Highlands. McKenzie Highlands' motions to dismiss Tyson's claims against it and Dykhuis's counter-claim for indemnification under Fed. R. Civ. P. 12(b)(6) are before the court. For the reasons set forth below, the court grants the motion to dismiss Tyson's negligence claims against McKenzie Highlands, denies the motion to dismiss the product liability claims, and denies McKenzie Highlands' motion to dismiss Dykhuis's cross-claim for indemnification.

I. STANDARD OF REVIEW

Detailed factual allegations aren't required to meet the notice pleading requirements of Rule 8(a). To survive a motion to dismiss under Rule 12(b)(6), the factual allegations in the compliant must "state a claim to relief that is plausible on its face" — one that "raise[s] a right to relief above the speculative level", "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and gives the defendant fair notice of the claims being asserted and the grounds upon which they rest. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-570 (2007)). In deciding whether the claims asserted are plausible, the court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor, id.; Anicich v. Home Dept U.S.A., Inc., 852 F.3d 643, 648 (7th Cir. 2017), but it can't consider matters outside the pleadings without converting the motion to a motion for summary judgment. [1] See Fed. R. Civ. P. 12(d); Reger Dev., LLC v. National City Bank, 592 F.3d 759, 763 (7th Cir. 2010): Stakowski v. Town of Cicero, 425 F.3d 1075, 1078 (7th Cir. 2005). Twombly and Iqbal "require the plaintiff to 'provid[e] some specific facts' to support the legal claims asserted in the

---

[1] The affidavit attached to Dykhuis 's response to McKenzie Highlands' motion to dismiss [Doc. No. 25-1] presents facts outside those alleged in the pleadings and the court didn't consider it in deciding these motions.

complaint." McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (*quoting* Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009)). The plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

## II. STATEMENT OF FACTS

The facts, as alleged in the amended complaint, are as follows.

Tyson operates a meat processing plant in Logansport, Indiana. In October 2011, it entered into a Procurement Agreement with Dykhuis Farms to purchase hogs supplied by Dykhuis. The Agreement required Dykhuis Farms to deliver acceptable hogs to the Logansport plant. Dykhuis, in turn, subcontraced with McKenzie Highlands to raise the hogs it would sell to Tyson.

Dykhuis and/or McKenzie Highlands delivered approximately 267 hogs to Tyson in August 2019. Tyson processed the hogs and commingled the meat with other meat processed at the Logansport plant.

Two days later, Dykhuis informed Tyson that the 267 hogs hadnt gone through the three day withdrawal period for the Neo-Sol 50 supplement before delivery, as required by 21 C.F.R. § 520.1482. As a result of the incomplete withdrawal period, 1,786,245 pounds of fresh meat product were contaminated and had to be disposed of, causing Tyson"serious financial injury for the loss of its product" – an estimated $1,765,974.12, exclusive of costs, fees, and interest.

III. M<small>C</small>K<small>ENZIE</small> H<small>IGHLANDS'</small> M<small>OTIONS TO</small> D<small>ISMISS</small>

McKenzie Highlands contends that Tyson's negligence claims must be dismissed because Tyson hasn't alleged any relationship between it and McKenzie Highlands that would give rise to a duty of care, and that Tyson's product liability claims should be dismissed because McKenzie didn't manufacture or sell a "product", it simply provided a service for Dykhuis (raising Dykhuis's hogs).

A. Negligence Claims

"Whether a duty exists is a question of law for the court to decide." Goodwin v. Yeakles' Sports Bar and Grill, 62 N.E.3d 384, 386-87 (Ind. 2016); Yost v. Wabash College, 3 N.E.3d 509, 515 (Ind. 2014). Tyson alleges that McKenzie Highlands owed it a duty of care under common law because McKenzie Highlands: (1) raised the hogs, (2) was required to ensure that the hogs underwent the three day withdrawal period for Neo-Sol 50 supplements, and (3) delivered (or allowed Dykhuis to deliver) the hogs to Tyson before the withdrawal period had expired. It also contends that McKenzie Highlands owed it a statutory duty under the Indiana Products Liability Act because it placed a defective product (the hogs) "into the stream of commerce." I<small>ND</small>. C<small>ODE</small> 34-20-2-1.

McKenzie Highlands doesn't dispute that a duty can be created by common law or statute, as Tyson contends, *see* Holtz v. J.J.B. Hilliard W.L. Lyons, Inc., 185 F.3d 732, 740 (7th Cir. 1999); Nat'l R.R. Passenger Corp. v. Everton by

4

Everton, 655 N.E.2d 360, 364 (Ind. App. 1995), but asserts that Tyson still must show that there was some type of relationship between the parties that would give rise to a duty, citing J.B. Hunt Transport, Inc. v. Guardianship of Zak, 58 N.E.3d 956, 971 (Ind. App. 2016); Williams v. Cingular Wireless, 809 N.E.2d 473, 476 (Ind. App. 2004); Essex v. Ryan, 446 N.E.2d 368, 371 (Ind. App. 1983), and it hasn't done that. The court agrees with McKenzie Highlands on this point.

When there's no declared or articulated duty, Indiana courts use a balancing test to determine whether a duty exists, and consider (1) the relationship between the parties, (2) the foreseeability of the occurrence, and (3) public policy concerns. Goodwin v. Yeakle's Sports Bar and Grill, 62 N.E.3d at 387; Yost v. Wabash College, 3 N.E.3d at 515; *see also* Spierer v. Rossman, 798 F.3d 502, 510-511 (7th Cir. 2015). Tyson asserts that McKenzie Highlands was a sub-contractor for Dykhuis, that McKenzie Highlands raised Dykhuis's hogs, and that McKenzie Highlands may, or may not, have delivered the hogs for Dykhuis. But Tyson doesn't allege that McKenzie Highlands had any relationship with it that would give rise to a duty of care. The mere assertion that its claim arises under Indiana common law doesn't cure the defect.

### B. Tyson's Product Liability Claims

McKenzie Highland raises a single challenge to Tyson's product liability claims. It contends that it provided a service (raising Dykhuis's hogs), nothing more, and the Indiana Products Liability Act doesn't apply to services, *see* IND.

5

CODE § 34-6-2-114(b) ("The term ["product"] does not apply to a transaction that, by its nature, involves wholly or predominantly the sale of a service rather than a product."), so Tyson's claims should be dismissed. *See* Golden Corral Corp. V. Lenart, 127 N.E.3d 1205 (Ind App. 2019); Lenhardt Tool & Die Co. v. Lumpe, 703 N.E.2d 1079, 1085 (Ind. App. 1998).

Whether a transaction is predominately for a product or for a service is generally a question of fact that can't be decided on a motion to dismiss. It depends on a variety of factors, including:

> 1) the language of the contract; 2) the circumstances of the parties and the primary reason they entered into the contract; 3) the final product the purchaser bargained to receive, and whether it may be described as a good or a service; and 4) the costs involved, and whether the purchaser was charged only for goods or a price based on both goods and services.

Hathaway v. Cintas Corporate Service, Inc., 903 F.Supp.2d 669, 678 (N.D. Ind. 2012) (citations omitted).

McKenzie Highlands argues in the alternative that animals aren't "products", citing Anderson v. Farmes Hybrid Cos., 408 N.E.2d 1194, 1198 (Ill. App. 1980); Latham v. Wal-Mart Stores, Inc., 818 S.W.2d 673, 676 (Mo.App. 1991), and that the court shouldn't expand the definition of "product" to include animals because its jurisdiction is based on diversity and Indiana courts haven't addressed the issue yet. Mathioudakis v. Conversational Computing Co., 2012 WL 4052316 (S.D. Ind. Sep. 13, 2012). But Illinois law doesn't control in this case, and the Indiana Products Liability Act defines the term "product" broadly to

6

include "any item or good that is personalty at the time it is conveyed by the seller to another party." IND. CODE § 34-6-2-114. Tyson contends that Indiana courts defer to the Uniform Commercial Code's definition of a "good", citing Dow Chem. Co. v. Ebling, 723 N.E.2d 881, 904–905 (Ind.Ct.App.2000), *aff'd in relevant part*, 753 N.E.2d 633 (Ind.2001), which defines the term as "all things ... which are movable at the time of identification to the contract for sale" and includes "the unborn young of animals." IND. CODE § 26-1-2-105. The court agrees with Tyson that it's logical to conclude that "if the unborn young of an animal is a good, then the adult mature animal ... is also a good under Indiana law."

Accordingly, the court denies McKenzie Highlands motion to dismiss Tyson's product liability claims.

### C. Dykhuis's Indemnification Claim

McKenzie Highlands contends that Dykhuis isn't entitled to indemnification under Michigan or Indiana law because a viable claim for indemnification exists only if Dykhuis is alleged to be vicariously liable for McKenzie Highlands actions, Langley v. Harris Corp., 321 N.W.2d 662 (Mich. 1982); Peeples v. City of Detroit, 297 N.W.2d 839 (Mich. App.1980), and "where a party seeking indemnity is without actual fault" Roltec, Div. Of Orbitron, Inc., v. Murray Equipment, Inc., 626 N.E.2d 533, 535 (Ind. App. 1993); Mullen v. Cogdell, 643 N.E.2d 390, 400

(Ind. App. 1994), and Tyson alleges that Dykhuis is liable to Tyson for its own actions, not McKenzie Highlands.

Dykhuis concedes that it's claim for indemnification fails under Michigan law, but contends that Indiana law governs this case, allows it to move forward even though Dykhuis hasn't become obligated to pay damages yet, Fitz v. Rus-Oleum Corp., 883 N.E.2d 1177, 1181 (Ind. App. 2008), and requires merely that a party be without actual fault and be compelled to pay damages. Underwood v. Fulford, 128 N.E.3d 519, 524-25 (Ind. App. 2019). Dykhuis asserted that it was without fault in its cross-claim, when it alleged that "the McKenzie Defendants [] were solely responsible for any of the alleged issues with the Hogs" and the damages Tyson sustained, and that it's entitled to indemnification, creating issues of fact that can't be resolved on a motion to dismiss. The court agrees.

Dykhuis's indemnity claim isn't rooted in contract, but arises in tort, as it stems from Tyson's negligence claim. Indianapolis-Marion Cty. Public Library v. Charlier Clark & Linard, P.C., 929 N.E.2d 838 849-50 (Inc. App. 2010) ("Typically, common-law claims for indemnity arise in tort."). That tort and the alleged injuries occurred in Indiana, where the injury was inflicted. Whether Dykhuis is at fault is a question of fact that can't be resolved on a motion to dismiss.

IV. CONCLUSION

For the foregoing reasons:

8

McKenzie Highlands' motion to dismiss Tyson's claims [Doc. No. 20] is GRANTED as to the negligence claims (Counts 6, 8, 10 and 13), and DENIED as to the product liability claims (Counts 7, 9, 12 and 14); and its motion to dismiss Dykhuis's cross-claim for indemnification [Doc. No. 40] is DENIED.

SO ORDERED.

ENTERED:   March 31, 2022


　　　　　　　　　　　　　　   /s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　Judge
　　　　　　　　　　　　　　United States District Court